SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
By:  Jeffrey P. Blumstein, Esq. (JB-2727)
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey  08648
Tel:  (609) 275-0400; Fax:  (609) 779-6042
Email:  jblumstein@szaferman.com
Attorneys for Plaintiff, Nationwide Ambulance
   Services, Inc., A New Jersey Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONWIDE AMBULANCE SERVICES, INC., A New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAFEGUARD SERVICES, L.L.C.,<br><br>Defendant. | Civil Action No:<br><br><u>CIVIL ACTION</u><br><br>VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION, AWARD OF DAMAGES AND DEMAND FOR JURY TRIAL |

Plaintiff, Nationwide Ambulance Services, Inc., A New Jersey Corporation ("Nationwide"), doing business at 410 North Avenue East in the Township of Cranford, County of Union, and State of New Jersey by way of Complaint against Defendant, SafeGuard Services, L.L.C. ("SafeGuard"), doing business at 3450 Lakeside Drive, Suite 201 in the City of Miramar, County of Broward, and State of Florida, and also doing business at 225 Grandview Ave, Mailstop F-20 in the Borough of Camp Hill, County of Cumberland, and

618333.1

Commonwealth of Pennsylvania, by and through its attorneys, says that:

## JURISDICTION AND VENUE

1. SafeGuard is, and at all times material hereto, and was incorporated under the laws of the State of Delaware as a limited liability company.

2. SafeGuard maintains, and at all times material hereto, and did maintain its corporate headquarters in the City of Miramar, County of Broward, and State of Florida.

3. SafeGuard maintains, and at all times material hereto, and did maintain and operate its principal place of operations as to Plaintiff in the Borough of Camp Hill, County of Broward, and Commonwealth of Pennsylvania.

4. Nationwide is, and at all times material hereto, and was incorporated under the laws of the State of New Jersey as a New Jersey domestic stock corporation with its headquarters and principal place of operation in the Township of Cranford, County of Union, State of New Jersey.

5. This action seeks to resolve a controversy between Nationwide and SafeGuard, arising under the laws of the State of New Jersey, where Nationwide demands an injunction and recovery of damages against SafeGuard for its unlawful and tortious interference with Nationwide's prospective economic advantage to

wit: its right to receive prompt payment for services rendered by Nationwide to beneficiaries of the Social Security Act of 1965 ("Social Security Act") (42 U.S.C. § 1395, et seq.), which damages exceed the sum of $75,000.

6. Accordingly Nationwide alleges that the above-entitled court enjoys jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1332(a)(1).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2).

**FACTS COMMON TO ALL CAUSES OF ACTION**

8. SafeGuard is and at all times material hereto was a Zone Program Integrity Contractor under a contract with the Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services, whose mission is the administration of services mandated under the Social Services Act, codified at 42 U.S.C. ch. 7.

9. Nationwide is and at all times material hereto was a provider of ambulance services under Part B of the Social Security Act to beneficiaries eligible to receive benefits under said Act and Nationwide is eligible, pursuant to the provisions of 42 U.S.C. § 1395cc, subsection (a), to make direct claims for reimbursement for those services pursuant to 42 U.S.C. § 1395n(a).

10. One of these services that is eligible for reimbursement under Part B of the Social Security Act is the scheduled, repetitive, non emergency ambulance transportation of Medicare beneficiaries, where medically necessary, for the purpose of continuing dialysis for renal disease.

11. The gravamen of the Zone Program Integrity Contract between CMS and SafeGuard is, and at all times material hereto, that SafeGuard would attempt to detect and report suspected fraudulent uses of Medicare benefits with a view to eradicating such fraudulent use.

12. In its capacity as Zone Program Integrity Contractor with CMS, SafeGuard has, and at all times material hereto has, had the authority to make binding payment of claims recommendations to Highmark Medicare Services ("Highmark"), the Part B Medicare Administrative Contractor for Pennsylvania, Delaware, Maryland, New Jersey, and the District of Columbia metropolitan area, charged with processing Nationwide's claims for reimbursement for provision of Social Security Act, Part B services to Medicare beneficiaries.

13. On or about January 13, 2011, without lawful authority and without factual or legal justification of any nature, and claiming to act pursuant to its authority as a Zone Program Integrity Contract under a contract with CMS, SafeGuard advised Nationwide by letter that SafeGuard had determined that, because of

certain billing practices of Nationwide with respect to its claims for reimbursement for ambulance transportation of Medicare beneficiaries on a non emergent basis, it was going to conduct a "pre payment edit" of its billing practices. A true copy of the January 13, 2011 letter/notice is attached hereto as Exhibit "A", and is incorporated herein by reference as if set out in full.

14. The practical effect of this "pre-payment edit" was that SafeGuard would review Nationwide claims for reimbursement of services Nationwide provided to Medicare beneficiaries prior to processing of those claims by Highmark. The normal and timely processing of payment of these claims, as set forth thereafter, would be completely derailed and effectively stopped.

15. There are regulatory provisions concerning the due process requirements imposed upon Highmark if it determines that there is a reason to withhold reimbursement payments to a Social Security Act, Part B provider claimant before the claim is processed. None of those administrative procedures/regulatory provisions were followed with respect to any claim of Nationwide that was denied by Highmark on the basis of SafeGuard's recommendation.

16. Under the specified administrative procedures for the payment and processing of Social Security Act, Part B claims, Highmark must process all claims submitted to it by Social Security

Act, Part B providers within thirty (30) days of the submission thereof, and must thereafter forthwith pay over to the Social Security Act, Part B provider the specified reimbursement sum for each claim approved. If a claim is denied for any reason, the Social Security Act, Part B provider may apply to Highmark for review and, if that review is unfavorable, then to a Qualified Independent Contractor for subsequent review. If that subsequent review is unfavorable, the Social Security Act, Part B provider may then seek review from a Social Security Administration Administrative Law Judge and, if that review is unfavorable, the Social Security Act, Part B provider may then seek judicial review of an Administrative Law Judge.

17. The Qualified Independent Contractor is allowed sixty (60) days to conclude its review of the Social Security Act, Part B provider claim and the Administrative Law Judge is allowed ninety (90) days to rule on its review of the Social Security Act, Part B provider claims.

18. SafeGuard is required, as a condition of its contract as a Zone Program Integrity Contractor with CMS, to exercise due care in its performance of its duties under that contract. In this regard, "due care" includes a duty to establish, appreciate, and understand, based upon statutory, regulatory, and precedential law, the relevant distinctions between lawful and unlawful claim practices on the part of Social Security Act, Part B providers and to inform itself of all applicable legal rules and precedents and to make allegations of improper claims practices on the part of

Social Security Act, Part B providers only where such allegations are warranted in good faith under such applicable existing legal rules and precedents. In addition, SafeGuard is charged, under the terms of its contract with CMS, to act only to accomplish the purposes of that contract which is to detect and eliminate fraudulent Medicare billing practices.

19. Commencing on January 13, 2011, and thereafter, SafeGuard, as part of its "pre-payment edit", began to uniformly recommend denial of <u>every</u> claim submitted by Nationwide for non-emergency ambulance transportation of Social Security Act, Part B beneficiaries from their residences to their dialysis centers for dialysis treatment and back to their residences on the basis that Nationwide had failed to demonstrate, in support of its claims for reimbursement, that the ambulance transportation of these patients was medically necessary. In all cases where such denial recommendations have been made, however, Nationwide has provided, <u>inter alia</u>, in support of its claim, a Certificate of Medical Necessity duly executed within the sixty (60) days immediately preceding the transportation upon which the claim was based by the Social Security Act, Part B beneficiary's health care provider.

20. The Code of Federal Regulations provides a "Special rule for nonemergency, scheduled, repetitive ambulance services":

> Medicare covers medically necessary, nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the services to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity

>  requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished.

[42 C.F.R. § 410.40(d)(2)].

21. Based upon the recommendation of SafeGuard, as more particularly set forth in the preceding paragraphs of this Verified Complaint, Highmark has nonetheless denied every one of Nationwide's claims for which such recommendation was made.

22. On or about July 14, 2011, by and through its legal counsel, Nationwide advised SafeGuard by letter of the legal premises of its contention that SafeGuard was not following settled legal precedent in its recommendations that Highmark deny Nationwide's claims for non emergent ambulance transportation of Social Security Act, Part B beneficiaries on a scheduled, repetitive basis to and from the dialysis center on the basis of lack of demonstrated medical necessity where a Certificate of Medical Necessity had been signed by the beneficiary's health care provider within sixty (60) days of the transportation. A true copy of that letter with attached Exhibits is attached hereto as Exhibit "B" and is incorporated herein by this reference as if set out in full. A true copy of the response from SafeGuard's Chief Legal Counsel, dated July 25, 2011, which is attached hereto as Exhibit "C", simply stated that "SafeGuard does not share your view as to the interpretation of the legal provisions governing the coverage and payment of certain ambulance services."

23. Nationwide sought review with Highmark for every one of the claims it denied upon the recommendation of SafeGuard as set forth in the preceding paragraph. The first nineteen (19) of those denials were overturned on the first level of appeal. After Nationwide advised SafeGuard that Highmark had overturned its decision, Nationwide received a letter from Highmark stating that it had reconsidered its review decision and was going to deny those nineteen (19) claims as well upon the recommendation of SafeGuard.

24. Approximately one thousand (1,000) claims have been appealed to Highmark, the Qualified Independent Contractor, and/or the Administrative Law Judge following Nationwide's receipt of SafeGuard's January 13, 2011 correspondence. Nationwide has received favorable decisions on a *de minimis* number of occasions. The Administrative Law Judge has not yet ruled on any claims submitted by way of appeal.

25. As a direct and proximate consequence of SafeGuard's recommendations, Nationwide has suffered, and continues to suffer, damages by reason of loss of use of its revenue attributable to the claims that were the subject of those recommendations by SafeGuard, as well as by reason of its necessarily incurring substantial expenditures in appealing the denials.

26. Nationwide will continue to suffer the damages described in the preceding paragraph unless SafeGuard is enjoined by this Court from making recommendations as hereinbefore alleged and from continuing with its "pre-payment edit" as hereinbefore more particularly set forth.

## COUNT ONE

## INTERFERENCE WITH CONTRACT

27. Nationwide repeats and realleges Paragraphs 1-26 above as if fully set forth herein.

28. Nationwide has performed all of the services for which it submitted the claims which were the subject of SafeGuard's recommendations for denial. As such, Nationwide was and is entitled, by contract with CMS through its Medicare Administrative Contractor Highmark, to receive timely payment by way of reimbursement for those services rendered. At all times material hereto, Nationwide enjoyed an enforceable right to reimbursement for legitimate and meritorious claims for the services itemized by those claims that SafeGuard has recommended be denied within thirty (30) days of the submission of those claims.

29. By making recommendations that Nationwide's claims be denied on the exclusive grounds that they did not adequately document the medical necessity for ambulance transportation of the Social Security Act, Part B beneficiaries concerned, SafeGuard interfered with Nationwide's contractual right to receive prompt, monetary reimbursement from Highmark for those claims.

30. That interference was unlawful because SafeGuard knew and/or intentionally and maliciously disregarded settled law providing that medical necessity for non emergency ambulance transportation for scheduled repetitive dialysis treatment of Social Security Act, Part B beneficiaries would be established by the

patient's physician's Certification of Medical Necessity for the transportation within sixty (60) days prior to that transportation.

31. As a direct and proximate result of SafeGuard's unlawful interference with Nationwide's contractual rights as hereinbefore set forth, Nationwide suffered damage including, but not limited to, loss of use of revenue that would have been paid over to it within thirty (30) days of submission of the claims.

32. As a result of the loss of revenue as hereinbefore set forth, Nationwide was forced, at considerable loss to itself, to abandon expansion projects to which it had devoted substantial financial and personnel resources, Nationwide was forced to reduce staff and equipment which caused it to suffer substantial loss of its competitive advantages, and Nationwide will continue to suffer these losses unless and until this Court enjoins SafeGuard from recommending denial of Nationwide's claims on the basis set forth in this Verified Complaint.

33. As a direct and proximate result of the loss of revenue as hereinbefore set forth, Nationwide has suffered economic damages in the sum of five hundred thousand dollars ($500,000.00), or in such other sum according to proof. As a further result of the loss of revenue as hereinbefore set forth, Nationwide has suffered non economic damages, including, but not limited to, loss of business goodwill in the sum of one million five-hundred thousand dollars ($1,500,000.00), or in such other sum according to proof.

34. The conduct of SafeGuard, in doing the things hereinbefore alleged, was malicious in that it was intended to cause harm to Nationwide, or it was wilful and wanton in that it was done in the knowledge of or high probability that it would cause harm to Nationwide and SafeGuard was recklessly indifferent to the consequence of its acts, thereby justifying an award of punitive damages within the contemplation of the New Jersey Punitive Damage Act, codified at N.J.S.A. 2A:15-5.10, et seq.

### SECOND COUNT

### NEGLIGENCE

35. Nationwide repeats and realleges Paragraphs 1-34 above as if fully set forth herein.

36. At all times material hereto, SafeGuard had a duty, voluntarily assumed by it, to use due care in performing its functions as a Zone Program Integrity Contractor with CMS, so that it would not cause injury to any party by the performance of those duties.

37. Among other things, that duty of due care included a duty to act as a reasonable person in performance of those duties, including, but not limited to, informing itself fully of the settled legal principles that guide its determination whether or not to recommend that a claim made by a Social Security Act, Part B provider be denied and to diligently and conscientiously review the factual basis of claims it determined to review in order to apply the appropriate legal principles to that factual basis in order to

determine whether or not to make a recommendation that a claim be denied and to withhold from making such a denial where the settled legal principles, as conscientiously applied to the facts, do not support such a denial.

38.  At all times material hereto, SafeGuard could reasonably foresee that if it made a recommendation to Highmark that a Social Security Act, Part B provider's claim be denied, damage would accrue to that provider in the form of loss of use of revenue, as well as incurring expenses in appealing the denial.

39.  By recommending that Highmark deny Nationwide's claims on grounds that are contrary to settled law, SafeGuard breached its duty of due care in that each recommendation was made without any legal authority whatsoever and in contravention of settled legal principles establishing medical necessity in situations such as those presented resulting in the claims that were the subject of the recommended denial by SafeGuard.

40.  As a direct and proximate result of SafeGuard's breach of its duty of due care, Nationwide suffered damage including, but not limited to, loss of use of revenue that would have been paid over to it within thirty (30) days of submission of the claims that SafeGuard recommended by denied.

41.  As a further direct and proximate result of SafeGuard's breach of its duty of due care, Nationwide was forced to reduce staff and equipment which caused it to suffer substantial loss of its competitive advantages, and Nationwide will continue to suffer

these losses unless and until this Court enjoins SafeGuard from recommending denial of Nationwide's claims on the basis set forth in this Verified Complaint.

42. As a further direct and proximate result of SafeGuard's breach of its duty of due care, Nationwide has suffered economic damages in the sum of five hundred thousand dollars ($500,000.00) or in such other sum according to proof. As a further result of the loss of revenue as hereinbefore set forth, Nationwide has suffered non economic damages, including, but not limited to loss of business goodwill in the sum of one million five-hundred thousand dollars ($1,500,000.00), or in such other sum according to proof.

43. The conduct of SafeGuard, in doing the things hereinbefore alleged, was wilful and wanton in that it was done in the knowledge of or high probability that it would cause harm to Nationwide and SafeGuard was recklessly indifferent to the consequence of its acts, thereby justifying an award of punitive damages within the contemplation of the New Jersey Punitive Damage Act.

**WHEREFORE**, Nationwide respectfully requests judgment in its favor, and against SafeGuard:

    (a) awarding compensatory damages for the recovery of economic damages incurred by reason of economic losses in the sum of five-hundred thousand dollars ($500,000.00), or according to proof;

(b) awarding compensatory damages for the recovery of non economic damages incurred by reason of non economic losses in the sum of one million, five-hundred thousand dollars ($1,500.000.00), or according to proof;

(c) awarding punitive damages in a sum sufficient to fulfil the purposes of the New Jersey Punitive Damages Act;

(d) preliminarily enjoining SafeGuard from recommending denial of Nationwide's claims for reimbursement on the basis set forth in the foregoing Verified Complaint;

(e) directing that SafeGuard immediately cease the "pre payment edit" referred to in its January 13, 2011 letter to Nationwide;

(f) awarding Nationwide for attorneys' fees and costs of suit; and

(g) awarding Nationwide such other and further relief as the court may deem just and proper.

## CERTIFICATION

PLEASE TAKE NOTICE the undersigned attorney certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding, nor is any other action or arbitration proceeding contemplated, and all known necessary parties have been joined.

**JURY DEMAND**

PLEASE TAKE NOTICE that the Plaintiff Nationwide Ambulance Services, Inc. hereby demands a trial by jury as to all issues so triable.

                                        Szaferman, Lakind, Blumstein
                                            & Blader, P.C.
                                        Attorneys for Plaintiff
                                        Nationwide Ambulance Services, Inc.

                                        By:    s/ Jeffrey P. Blumstein
                                                   Jeffrey P. Blumstein, Esq.
                                                   (JB-2727)

                                        Law Offices of William A. Romaine

## VERIFICATION OF COMPLAINT

**Cathie Ilg** of full age, hereby certifies as follows:

1. I am the Assistant Operations Manager of Plaintiff, Nationwide Ambulance Services, Inc., in the within lawsuit. I have read the allegations in the foregoing Verified Complaint. The allegations contained therein are true and accurate to the best of my knowledge and belief.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.

_____
Cathie Ilg

Dated: September 8, 2011