# EXHIBIT "B"

# Szaferman
# Lakind  Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

Arnold C. Lakind
Barry D. Szaferman
Jeffrey P. Blumstein
Steven Blader
Lionel J. Frank**
Jeffrey K. Epstein+
Stuart A. Tucker
Brian G. Paul*
Craig J. Hubert ++ +++
Michael R. Paglione*
Daniel S. Sweetser*
Robert E. Lytle
Janine G. Bauer****
Daniel J. Graziano, Jr.

Paul T. Koenig, Jr.
Counsel

Bruce M. Sattin***
Robert A. Gladstone
Janine Danks Fox*
Ryan A. Marrone
Of Counsel
Michael F. Chazkel
Of Counsel

Robert P. Panzer
Robert G. Stevens, Jr.**
Michael D. Brottman**
Tracey C. Hinson**
Benjamin T. Branche*****
Lindsey Moskowitz Medvin**
Anthony M. Anastasio*
Mark A. Fisher
Robert L. Lakind***
Thomas J. Manzo**

101 Grovers Mill Road, Suite 200, Lawrenceville, New Jersey 08648
Tel: 609.275.0400   Fax: 609.275.4511   www.szaferman.com

+Certified by the Supreme Court of
New Jersey as a Matrimonial Attorney
++Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney
+++Certified by the Supreme Court of
New Jersey as a Criminal Trial Attorney
*NJ & PA Bars
**NJ & NY Bars
***NJ, NY & PA Bars
****NJ, NY, PA & FL Bars
*****NJ, PA, MD & DC Bars

July 14, 2011

*Via E-Mail and Regular Mail*
marcia.baldwin@hp.com
wayne.murray@hp.com
Safeguard Services, LLC.
EA-BISC
225 Grandview Avenue
Mailstop F-10
Camp Hill, PA 17011

RE:   Nationwide Ambulance Services
      Medicare Part B Provider #001985

Dear Sirs:

This firm and William A. Romaine, Attorney at Law, 206 West Lacey Boulevard #309, Hanford, California 93230 represent Nationwide Ambulance Services, Inc., a Medicare Part B provider whom, according to your letter to them dated January 13, 2011, you have identified for a "pre-payment edit (*sic.*)." As we understand it, you have taken this action pursuant to your authority as a Zone 6 Program Integrity Contractor (ZPIC) and Program Safeguard Contractor (PSC) with Medicare. Since your identification of our client for inclusion in a "pre-payment edit (*sic.*)," all of their claims for providing non-emergency ambulance services to transport Medicare beneficiaries by ambulance from their residences to their dialysis treatment and back on a scheduled, repetitive basis have been referred to you and have, upon your recommendation, been denied.

As we understand it, you are basing this recommendation for denial in every case upon your interpretation of the Center for Medicare and Medicaid Services (CMS) Online Manual System, Internet Only Manual (IOM), Publication 100-2, Chapter 10, Publication 100-04 Medicare Claims Processing Manual, Chapter 15, Section 40 and Chapter 3, section 10.5. Evidently, your interpretation of that manual has caused you to conclude, correctly, in our opinion, that our client's claims must

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

demonstrate medical necessity for ambulance transportation of dialysis patients from their home to the dialysis treatment center and back.   However, it also appears that you are misreading one sentence found in section 10.5 of Chapter 3, for the proposition that the Certificate of Medical Necessity special exception to the general rule is equivalent in evidentiary value to the physician's order for ambulance transportation referred to in Chapter 3, section 10.5 of the IOM.

We are writing to disabuse you of that notion and to advise you of the considerable damage you are visiting upon our client by your misinterpretation of that sentence.   We are sure that as a ZPIC contractor, you are aware that your protection from civil liability to our client depends upon your employment of "due care" in the prosecution of your contractual duties to maintain program integrity in the Eastern Zone. Due care requires a diligent effort on your part to understand the laws, regulations, and procedures governing the payment of claims to Medicare Part B providers for services rendered to Medicare beneficiaries.

Your erroneous reading seems to be based upon your misunderstanding of the application of the exception provided by 42 C.F.R. § 410.40(d)(2) to the general rule set forth in 42 C.F.R. § 410.40(d)(1).   The exception applies where the ambulance service provider obtains, before the transportation, a certificate of medical necessity for a non-emergency ambulance transportation of a patient for a scheduled, recurrent therapy, such as dialysis. As we read your voluminous correspondence in the matter, it would appear that you are misunderstanding CMS's admonition not to regard a "physician's order for ambulance transportation" as evidence of medical necessity. Unlike a "physician's order for ambulance transportation," which is not necessarily evidence of necessity, a "certificate of medical necessity," duly completed and signed in accordance with the provisions of 42 CFR § 410.40(d)(2), most certainly is evidence of medical necessity, as a matter of regulatory law.   This has been settled Medicare law for many years and is not open to interpretation by CMS in its IOM.

We think that had you exercised due diligence in this regard, you would have quickly learned that the courts have repeatedly rejected your interpretation of the IOM provision and have steadfastly held to the proposition that when a provider of ambulance services possesses a current certificate of medical necessity before providing ambulance transportation on a non emergency basis for scheduled, repetitive therapy, such as dialysis, no further evidence of medical necessity is required.   In this regard, we invite you to consider the court's ruling in the case of *Moorecare Ambulance Service, LLC, vs. Department of Health and Human Services*, United States District Court, Middle District of Tennessee, Case No. 1:09-CV-0078 (2011 Westlaw 839502), at p. 4. You may wish, additionally to consider the circumstances presented in *Lifeline EMS, Inc. vs. Arkansas Blue Shield, et.al.* United States District Court, Eastern District of Louisiana, Case No. CIV A.00-3176 (2001 Westlaw 118597) at pp. 3 - 4, where Arkansas Blue Shield acknowledged that it had misconstrued the requirement of medical necessity to require evidence of bed

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

confinement despite the provider's possession of a certificate of medical necessity. Not only is the *Moorecare* the most recent (March, 2011) statement of the well-settled law on this issue, on February 15, 2008, U.S. Administrative Law Judge LeAnn Canter ruled on this issue on a number of appeals by our client of Highmark's unfavorable decisions based entirely upon the misinterpretation adopted by you in the identical circumstances.   (Copies of the decisions are attached for your review).

Moreover, we cannot understand how you could have possibly conducted any meaningful review of our client's claims history in order to identify it as an appropriate subject for a "pre-payment edit (*sic*)" without encountering the fact that as recently as 2008, U.S. Administrative Law Judge Canter ruled that the interpretation you adopted was incorrect and that no further evidence of medical necessity was required for scheduled, repetitive non emergency ambulance transportation where our client held a certificate of medical necessity signed by the beneficiary's physician within 60 days of the ambulance transportation that is the subject of the claim. We strongly urge you to review our client's entire claim history with Highmark and read Administrative Law Judge Canter's decision carefully to appreciate the magnitude of your error.

Not to put too fine a point on it, we cannot help but conclude from the foregoing that you have utterly failed to exercise due care or due diligence in the performance of your duties as a Medicare ZPIC and/or PSC with respect to our client's claims for ambulance transportation as set forth above and you have erroneously and recommended denial of a substantial number of their claims for reimbursement despite clearly settled law rejecting your interpretation. Your conduct in that regard has resulted in considerable damage to our client and we are presently considering recommending that our client institute litigation against you in the courts to recover their damages for your careless handling of and tortious interference with their properly evidenced claims for reimbursement.

Please be advised that our client is concurrently pursuing their appeals remedies for the wrongful denial of reimbursement occasioned by your negligence. To date the Qualified Independent Contractor review has rejected your interpretation in 11 of the claims you recommended rejection of and is reviewing a considerable number more.   In addition, our client has sought ALJ appeal of about 30 claims where the Qualified Independent Contractor has upheld your interpretation. Given the settled state of the law, and the requirement that the ALJ follow settled precedent, we do not doubt but that the remainder of those cases under review will be resolved in our client's favor.

As of this point, therefore, you can no longer continue in good faith to blindly recommend rejection of our client's claims for reimbursement of ambulance transportation provided on a non-emergency, repetitive basis, to Medicare beneficiaries who have documented the medical necessity of the transportation under

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

the procedures specified in 42 C.F.R. § 410.40(d)(2) on the basis that medical necessity has not been proven beyond possession of a current certificate of medical necessity for that transportation. We will anticipate that forthwith upon receipt of this correspondence, you will immediately instruct your analysts to discontinue recommending denial of benefits on this basis. Your failure to advise us within two business days of the transmission of the correspondence to you that you have done so will result in our conclusion that you have decided to proceed in disregard of settled law and our client will it deems itself free to pursue all available remedies, including injunctive and monetary relief.

You can contact either Mr. Romaine or myself directly.

Very truly yours,

Szaferman, Lakind, Blumstein & Blader, P.C.

By:_____
Jeffrey P. Blumstein, Esq.
Direct Fax: 609.779.6042
E-Mail: jblumstein@szaferman.com

Law Office of William A. Romaine

By:_____
William A. Romaine, Esq.
206 West Lacey Boulevard, #309
Hanford, California 93230
Tel: (559) 582-9360; Fax: (559) 582-9350
E-Mail: war@lawromaine.com

JPB:scj
Encls.

cc:    Peter Reisman, Associate Regional Administrator
          – via email ronycfm@cms.hhs.gov
       Centers for Medicare and Medicaid Services, Region 2
       Division of Financial Management and Fee for Service Operations
       Nationwide Ambulance Services, Inc.
       Highmark Medicare Services – via email

Westlaw.

Slip Copy, 2011 WL 839502 (M.D.Tenn.)
**(Cite as: 2011 WL 839502 (M.D.Tenn.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee,
Columbia Division.
MOORECARE AMBULANCE SERVICE, LLC,
Plaintiff,
v.
The DEPARTMENT OF HEALTH AND HUMAN
SERVICES and Kathleen Sebelius, in her official
capacity as Secretary/Director of D.H.H.S., Defendants.

No. 1:09-0078.
March 4, 2011.

G. Christopher Kelly, Lagrange, GA, James A. Hewitt, Law Office of James Hewitt, Nashville, TN, for Plaintiff.

Sam Delk Kennedy, Jr., Office of the United States Attorney, Nashville, TN, for Defendants.

## MEMORANDUM AND ORDER
ALETA A. TRAUGER, District Judge.

*1 Pending before the court is the plaintiff's Motion for Summary Judgment (Docket No. 18), to which the defendants have responded (Docket No. 23). For the reasons discussed herein, the parties' briefing on key issues is insufficient, and, therefore, the court will direct further briefing as discussed below.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, MooreCare Ambulance Service, LLC, is an ambulance service with its principal office in Lawrenceburg, Tennessee.[FN1] The defendants are the Department of Health and Human Services (DHHS) and its Secretary, Kathleen Sebelius, who is sued in her official capacity. The DHHS is the department within the federal government responsible for the administration of the Medicare program.

FN1. The plaintiff did not attach a Statement of Material Facts to its motion, but rather provided, in list form, a factual summary in its Memorandum in support of its motion. (Docket No. 18 Ex. 1.) The defendants provided a similar summary. (Docket No. 23 at 7-10.) The factual background is drawn from these submissions and from the "Administrative Record (A.R.)," which was filed under seal (Docket No. 9). For purposes of the present round of summary judgment briefing, the parties have agreed that "there are no material facts in controversy." (Docket No. 17.)

MooreCare provided ambulance services to Medicare beneficiaries, including transporting chronically/terminally ill patients from nursing homes to treatment centers, such as renal care facilities. Following each ride, MooreCare submitted a claim to the relevant Medicare Carrier (CIGNA) for the service, and, after reviewing the submission, CIGNA paid the claim.

In May 2007, AdvanceMed, which contracts with Medicare to "safeguard" Medicare from abuse, "requested all medical records and supporting documentation" from MooreCare "that supports the billing of claims for dates of service January 1, 2005 through September 30, 2006." (A.R. at 321.) After receiving those materials, AdvanceMed reviewed a "random sample of [60] claims" and found a "high level of payment error." (Id. at 323; Docket No. 23 at 8.) Specifically, in 89.32 percent of the claims examined, AdvanceMed found that Medicare was improperly billed for the ambulance service. (Id. at 323; Docket No. 23 at 8.) On the claims specifically reviewed, AdvancedMed determined that Medicare had been overbilled in the total amount of $19,131.59. (Id.) AdvanceMed extrapolated this finding across all claims submitted

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 839502 (M.D.Tenn.)
**(Cite as: 2011 WL 839502 (M.D.Tenn.))**

to Medicare during this period and determined that Medicare had overpaid the plaintiff $2,114,613.00. (*Id.*)

Through the standard administrative appeals process that is established by statute and regulation, MooreCare appealed, first seeking a "redetermination," which is a *de novo* review by the Medicare Carrier, CIGNA. CIGNA determined that the "assessed overpayment" decision by AdvanceMed was "fully valid" and affirmed the overpayment amount. (A.R. at 282.) The plaintiff maintains that CIGNA "did not do a new review, but simply adopted the prior decision" of AdvanceMed. (Docket No. 18 Ex. 1 at 2.)

Whatever the case, the plaintiff then appealed to the Qualified Independent Contractor (QIC), Q2 Administrators, which was hired by Medicare to make an "independent decision" regarding the dispute. (A.R. at 202.) The QIC issued a "partially favorable" ruling to the plaintiff, finding that the "actual overpayment amount can be reduced from $19,131.59 to $11,170.33." (*Id.*) The plaintiff then appealed this ruling to the Administrative Law Judge. (*Id.* at 119.)

**\*2** In his decision, the ALJ reviewed 23 claims that had been found to be not properly payable and reversed this decision as to 13 claims. (*Id.* at 64-80.) The plaintiff then appealed to the Medicare Appeals Council (MAC), which is the highest level of administrative review and whose decisions embody the final conclusions of the Secretary. (*Id.* at 40.) In a September 4, 2009 opinion, the MAC conducted a review of all 23 claims that had been reviewed by the ALJ. The MAC affirmed some findings but also reversed several that had been favorable to the plaintiff. (*Id.* at 9-33.)

The central issue before the MAC was whether the plaintiff had provided sufficient evidence that the ambulance trips under review were medically necessary, which is largely concerned with whether all other forms of transport, such as a wheelchair van, were contraindicated. (*See id.*) The plaintiff largely relied on Physician Certification Statements (PCS) from the patient's physician that stated that the patient could only safely travel by ambulance and "run reports," which are the plaintiff's report of the details of each trip. (*Id.*)

Relying on its interpretation of the Code of Federal Regulations and the Medicare Benefit Policy Manual (MBPM), the MAC concluded that "a signed physician's certification alone is insufficient to support Medicare coverage." (*Id.* at 11.) The MAC then went on to examine each claim and whether the record supported the use of an ambulance. (*Id.* at 11.) The MAC found that, in 20 cases, the claim was not properly covered by Medicare, usually because the necessity of an ambulance had not been clearly demonstrated by the record. (*Id.* at 11-30.)

On November 6, 2009, the plaintiff filed its Complaint in this case, asserting that the MAC had made various errors of law in evaluating the claims and that various procedural errors had been made throughout the administrative review process. (Docket No. 1.)

*ANALYSIS*
**I. Standard of Review**
Under the Medicare Act, the court's review of the Secretary's decision is limited to whether the decision comports with applicable law and its findings of fact are supported by substantial evidence. *Brainard v. Secretary of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir.1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

**II. The Motion for Summary Judgment**
The plaintiff's only potentially viable argument at this stage is that, under the relevant federal regulations, the 20 claims at issue were properly billed to Medicare.[FN2] Medicare law and the accompanying regulations provide guidance in determining when an ambulance trip for a patient is reimbursable by Medicare. As a basic rule, ambulance ser-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 839502 (M.D.Tenn.)
**(Cite as: 2011 WL 839502 (M.D.Tenn.))**

vices are covered "where the use of other methods of transportation is contraindicated by the individual's condition, but ... only to the extent provided in regulations." **42** U.S.C. § 1395x(s)(7).

FN2. The plaintiff makes a series of unavailing arguments. The plaintiff argues that he was denied "due process" because CIGNA "did not in fact make a new and independent decision on the claims at issue" but simply adopted AdvanceMed's findings. (Docket No. 18 Ex. 1 at 7.) plaintiff has pointed to no recognized, protected property interest that it was deprived of nor has it provided any clear evidence that it has been denied "notice and a meaningful opportunity to be heard," which is the "core of due process." *LaChance v. Erickson,* 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998). Additionally, the limited purpose of this proceeding is to consider the MAC's decision, not CIGNA's conduct. The plaintiff also argues that the claims never should have been reopened by AdvanceMed in the first place. (Docket No. 18 Ex. 1 at 14-16.) The initial determination to re-open claims, however, is not reviewable. **42** C.F.R. § 405.926(l). Also, while the plaintiff argues that the MAC should have only conducted a review of the portions of the ALJ's decision that were unfavorable to the plaintiff, the plaintiff requested a broad review of the ALJ's decision (A.R. at 40), and the MAC is authorized to conduct a "de novo" review of the ALJ's decision. **42** U.S.C. § 1395ff(d)(2)(A)-(B). The plaintiff also argues that there is no continuing basis for extrapolation, because the "high rate of error," initially used to justify extrapolation under the relevant regulations, no longer exists. (*See* Docket No. 18 Ex. 1 at 11.) The court's view is that the proper calculation of the amount that Medicare was overbilled should await the court's determina-

tion of how many of the sample claims were actually valid. As discussed below, this stage has not yet been reached.

**\*3** The relevant regulation, **42** C.F.R. 410.40(d)(1), provides the "general rule":

Medicare covers ambulance services ... only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated. The beneficiary's condition must require both the ambulance transportation itself and the level of service provided in order for the billed service to be considered medically necessary." Non-emergency transportation via ambulance is "appropriate" where "the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required. Thus, bed confinement ... is one factor that is considered in medical necessity determinations.

The regulations also provide a "special rule" for "nonemergency, scheduled, repetitive ambulance services." **42** C.F.R. § **410.** 40( d)( **2**). Under this rule, "Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished."

The plaintiff maintains that the claims at issue here concern patients receiving "nonemergency, scheduled, repetitive ambulance services" and that each patient had a certification of medical necessity provided within the 60-day window. (Docket No. 18 Ex. 1 at 3-4.) Under the plain language of the regulation, the plaintiff argues, this should be

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2011 WL 839502 (M.D.Tenn.)
**(Cite as: 2011 WL 839502 (M.D.Tenn.))**

enough for coverage under subsection (d)(2). (*Id.* at 4-6.) The defendants' argument on this issue essentially restates the relevant regulations and broadly requests that the court adopt the MAC's conclusions. (Docket No. 23 at 11-13 .)

The court agrees with the plaintiff's interpretation of the regulation. Clearly, the C.F.R. establishes a "special rule" for certain kinds of repetitive services, whereby a sufficiently detailed and timely "doctor's note" demonstrates medical necessity. Therefore, where the service is "scheduled" and "repetitive" and the "doctor's note" is sufficient, additional review of the record to determine medical necessity is not called for under the regulations.

While the court agrees with the plaintiff's interpretation of the regulations, the plaintiff's briefing is insufficient, because it does not point to evidence in the record for each claim-demonstrating that the service performed on the claim date was "scheduled" and "repetitive." Without this, the court is left at sea in the administrative record, guessing as to which claims of the 20 are actually covered by the "special rule," let alone the "general rule."

**\*4** Therefore, the first step in supplemental briefing will be for the plaintiff to clearly identify the portions of the record that demonstrate that a specific claim was for a "scheduled" and "repetitive" service. Once the plaintiff does that, it should, as a matter of completeness, point to where in the record a timely PCS exists that "certif[ies] that the medical necessity requirements" are met. Additionally, where evidence on the "scheduled" and "repetitive" nature of the service is lacking, the plaintiff should proceed under the general rule and, for each claim, demonstrate that the MAC erred in finding that the ambulance service was contraindicated. In short, a claim-by-claim analysis, with specific and precise citation to the record, is required for the court to have any chance at fairly determining where the MAC erred.

To be clear, from its initial review, the court

has serious concerns about the MAC opinion. The MAC does not cite the "special rule" and, at times, its opinion on the necessity of the ambulance service appears unsupported. (A.R. at 9-11.) An example from one of the 20 claims illustrates. L.D. was transported by the plaintiff via ambulance on July 11, 2005 from his nursing home to the hospital for a chest x-ray. (*Id.* at 13.) While the ALJ found the ambulance service appropriate, the MAC did not, stating that, "while the physician stated that the beneficiary required ambulance transport by stretcher, the physician did not describe the beneficiary's condition or how that condition required ambulance transport. The beneficiary's vital signs were stable and he was alert to person.... Despite the physician's indication that the beneficiary could not sit, the record shows that the beneficiary was found at his residence sitting in a chair and was returned upon discharge ... to a chair." (*Id.*)

The credibility of the MAC's ruling is undermined by the record. The run report for the July 11, 2005 trip states that, when the ambulance arrived, L.D., who was 89 and had recently suffered a stroke, was "laying in chair .... awake but did not respond," and, when he was returned from the hospital, he was "moved to chair ." (*Id.* at 431.) The PSC, which is dated July 11, 2005, states that L.D. cannot sit for the "duration of transport without pain and/or possibility of further injury." (*Id.* at 442.) There is nothing in the run report or the PSC to suggest that any other form of transport besides an ambulance would have been reasonable under the general rule.

In sum, the court is, for many of these claims, sympathetic to the plaintiff's position but is not, based upon the parties' briefing, in the position to assess each MAC ruling. Therefore, within 45 days, the plaintiff shall file a supplemental memorandum that addresses in each case, with specific citation to the record, where the MAC erred in applying the special and/or general rule. Additionally, in any case where the MAC reached its decision based upon a technical or procedural issue (see A.R. at 30

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 839502 (M.D.Tenn.)
**(Cite as: 2011 WL 839502 (M.D.Tenn.))**

for instance), the plaintiff must specifically argue
why the MAC's decision was incorrect. The defend-
ants will have 30 days to file a response brief. The
parties may request additional time as needed.

   **\*5** It is so ordered.

M.D.Tenn.,2011.
MooreCare Ambulance Service, LLC v. Depart-
ment of Health and Human Services
Slip Copy, 2011 WL 839502 (M.D.Tenn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2001 WL 118597 (E.D.La.), Med & Med GD (CCH) P 300,639
**(Cite as: 2001 WL 118597 (E.D.La.))**

c

United States District Court, E.D. Louisiana.
LIFELINE EMS, INC., et al
v.
ARKANSAS BLUE CROSS & BLUE SHIELD,
ETC., et al

No. CIV. A. 00-3176.
Feb. 8, 2001.

### ORDER AND REASONS
BARBIER, District J.

*1 Before the Court is the Reiterated Motion to Dismiss for Failure to State a Claim (Rec.Doc. 17), filed by defendants, Arkansas Blue Cross and Blue Shield ("Blue Cross"). Plaintiffs oppose the motion. The Court held oral argument on defendants' original motion on December 20, 2000, and on the reiterated motion on January 31, 2001, after which it took the matter under advisement.[FN1] For the reasons which follow, the Court finds defendants' motion should be GRANTED.

> FN1. Following the filing of the supplemental and amended complaint, as well as the reiterated motion to dismiss, the original motion was denied without prejudice as moot. Rec. Doc. 16.

### BACKGROUND
The Court takes the following facts from plaintiffs' original complaint and supplemental and amended complaint, as it must do in considering a motion to dismiss under Rule 12(b)(6). Lifeline EMS is a Louisiana corporation which formerly operated an ambulance service that regularly provided services for the Washington-St. Tammany Regional Medical Center, the Good Samaritan Nursing Home, and Riverside Medical Center. Petition, ¶¶ 2 & 10. On or about September 20, 1999, changes in regulations affecting ambulance services promulgated by the federal Health Care Financing Administration ("HCFA") became effective, which made

bed confinement a criteria for determining whether a patient could receive non-emergency transportation by ambulance. ¶ 6.[FN2] As a result of this change, Blue Cross informed ambulance service providers that it would conduct prepay audits of their non-emergency ambulance service. ¶ 8. After the pre-pay audits were instituted, Lifeline began to receive an increase in routine denials of claims, even when ambulance transport was ordered by a physician who had determined that ambulance transport was medically necessary, apparently based upon Blue Cross' determination that the patients were not bed confined. ¶ 12.

> FN2. The relevant provision is codified at **42 C.F.R. § 410. 40( d)**, and provides in pertinent part:

> (1) General rule. Medicare covers ambulance services only if they are furnished to a beneficiary whose medical condition is such that other means of transportation would be contraindicated. For nonemergency ambulance transportation, the following criteria must be met to ensure that ambulance transportation is medically necessary:

> (i) The beneficiary is unable to get up from bed without assistance.

> (ii) The beneficiary is unable to ambu- late.

> (iii) The beneficiary is unable to sit in a chair or wheelchair.

> (2) Special rule for nonemergency, scheduled ambulance services. Medicare covers nonemergency, scheduled ambulance services if the ambulance supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity require-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118597 (E.D.La.), Med & Med GD (CCH) P 300,639
**(Cite as: 2001 WL 118597 (E.D.La.))**

ments of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished.

(3) Special rule for nonemergency, unscheduled ambulance services. Medicare covers nonemergency, unscheduled ambulance services under the following circumstances:

(i) For a resident of a facility who is under the care of a physician if the ambulance supplier obtains a written order from the beneficiary's attending physician, within 48 hours after the transport, certifying that the medical necessity requirements of paragraph (d)(1) of this section are met.

(ii) For a beneficiary residing at home or in a facility who is not under the direct care of a physician. A physician certification is not required.

Plaintiff Jack Fussell [FN3] attempted to discuss and meet with defendant Merle Francis, Blue Cross' Manager of Professional Services for Louisiana Medicare Part B, on several occasions to discuss the denials. ¶ 13-15. Allegedly, Francis dismissed the documentation which stated that ambulance transport was medically necessary for certain patients, based on her conclusion that an additional determination that a patient was bed-confined was required before the patient would be eligible for non-emergency ambulance transport. ¶ 16.[FN4]

FN3. Fussell's standing to sue and his relation to the other parties is not clear on the face of the complaint. While at oral argument it was alleged that he is a shareholder of Lifeline EMS, that is not alleged within the complaint; nor are any grounds alleged for his standing given Lifeline EMS's continued corporate existence.

FN4. Plaintiffs' emphasize an alleged quote from Ms. Francis, that "You can tie a corpse in a wheelchair, so nobody will require non-emergency ambulance transportation," which apparently reflects Francis' understanding that under the new guidelines, bed confinement was a key criteria for non-emergency ambulance transport, and likewise, that it would be an extremely rare case in which someone would be considered completely bed-confined, i.e., unable to use a wheelchair under any circumstances. ¶ 16.

As a result of the denials, Lifeline determined that it could not provide non-emergency ambulance transport to the institutions with which it had previously contracted, because it could not count on getting reimbursements for those services. ¶¶ 18-21. Accordingly, it explained this to those institutions, who subsequently contracted with another ambulance service. ¶ 19. Thereafter, Lifeline's cash flow decreased to a point that it could no longer operate. ¶ 22.

Subsequently, Lifeline addressed its grievance to HCFA, which determined that Blue Cross had misinterpreted and misapplied the new guidelines, overemphasizing the issue of bed confinement to the exclusion of other applicable criteria in determining if non-emergency ambulance transport would be reimbursed. ¶ 27. Blue Cross then agreed to reprocess all of plaintiff's denied claims. ¶ 28. However, the reversal of denials upon reprocessing was not enough to reinvigorate Lifeline, which remains defunct. ¶ 29. Accordingly, plaintiffs argue that in applying the HCFA regulations the way they did, defendants exceeded their regulatory and statutory authority, thereby causing substantial losses and ultimately the demise of Lifeline. ¶ 31.

*2 Defendants argue in the instant motion that even accepting plaintiffs' version of events as true, they are entitled to have the claims against them dismissed, since plaintiffs have alleged no facts which would undermine the official immunity to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118597 (E.D.La.), Med & Med GD (CCH) P 300,639
**(Cite as: 2001 WL 118597 (E.D.La.))**

which they are entitled.

DISCUSSION

It is undisputed that defendants were acting pursuant to a Medicare carrier contract with HCFA, in connection with the administration of the Medicare Part B Program in Louisiana, and thus are considered officers or employees of the United States and are entitled to the same immunities as officers or employees of the United States. *See Bushman v. Seiler,* 755 F.2d 653, 655 (8th Cir.1985)(citing *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335 (1959)).

Under the Supreme Court's holding in *Westfall v. Erwin,* federal officials enjoy an absolute immunity from tort liability for discretionary conduct within the scope of their official duties. 484 U.S. 292, 297-98, 108 S.Ct. 580 (1988).[FN5] Applying the *Westfall* doctrine, the Court's task is to determine whether the defendants' alleged conduct falls within the scope of the defendants' official duties as a carrier, and whether it was discretionary and not merely ministerial. *Westfall,* 108 S.Ct. at 585.

> FN5. While *Westfall* was superseded by statute by the enactment of the Westfall Act, 28 U.S.C. § 2679(d), which eliminates the discretionary conduct requirement in suits against federal employees, in cases like the one at bar, against nongovernmental agents of the federal government (as opposed to employees), the doctrine enunciated in *Westfall v. Erwin* applies.

In their complaint and opposition memorandum, plaintiffs complain of three types of conduct by the defendants: defendants' conducting a pre-pay audit; defendants' interpretation of the federal regulations; and defendants' claims handling process. At oral argument, plaintiffs did not seriously dispute that defendants' conduct in conducting a prepay audit or handling claims are discretionary acts within the authority of a Medicare carrier. Moreover, they appeared to acknowledge that interpreting federal regulations (if that's what in fact the defendants did), would also be discretion-

ary acts within the defendants' authority. Instead, however, plaintiffs maintained that defendants' conduct (in construing bed confinement as a *sine qua non* for coverage for non-emergency ambulance transport, notwithstanding other factors indicating its medical necessity) was not interpretive, but rulemaking, and that such rulemaking is not a discretionary function within the scope of the authority of a Medicare carrier. Thus, in their supplemental and amended complaint, plaintiffs have alleged that "Defendants had no authority or discretion to rewrite the law or to flatly disregard the scope of their authority, and the conduct set forth herein was plainly beyond the scope of their contractual and statutory authority." Rec. Doc. 15, ¶ 26.3.

Defendants' argue that in implementing the rule the way they did, they were not rulemaking but interpreting the new HCFA rule, although they acknowledge that they subsequently learned their interpretation was wrong. However, they argue, this does not alter the fact that their conduct in interpreting the rule was discretionary and within the scope of their authority.

**\*3** Defendants perform their duties pursuant to Arkansas Blue Cross' carrier contract with HCFA. Under the law,

A contract between HCFA and a carrier ... specifies the functions to be performed by the carrier, which must include, but are not limited to, the following:

(a) Coverage

(1) The carrier ensures that payment is made only for services that are: (i) Furnished to Medicare beneficiaries; [and] (ii) Covered under Medicare.

In adhering to this legal and contractual requirement, it appears to the Court that a carrier has no choice but to exercise discretion in determining whether a service is covered. Likewise, in applying new regulations addressing what types of services will be covered, and under what conditions, the car-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118597 (E.D.La.), Med & Med GD (CCH) P 300,639
**(Cite as: 2001 WL 118597 (E.D.La.))**

rier necessarily must first interpret the rule so that it may apply it accordingly.

In this case, the new regulation that initiated the chain of events of which plaintiffs complain, outlines the requirements for coverage of the services plaintiffs provided. *See supra,* note 1. While defendants ultimately learned that they had misinterpreted the regulation (and accordingly, reprocessed all of plaintiffs' claims), the defendants' conduct was clearly in the nature of interpretation (or even misinterpretation), and as such, was a discretionary act within the scope of their authority.[FN6] As such, defendants are protected by official immunity under *Westfall.* To hold otherwise would permit persons in plaintiffs' position to defeat official immunity in every case in which it was dissatisfied with a carrier's decision by construing the decision, or the interpretation upon which it was based, as rulemaking rather than interpretive.

> FN6. The Court also observes that the regulation at issue, 42 C.F.R. § 410.41(d)(1)(i)-(iii), appears to require interpretation before it may be implemented, containing as it does three separate criteria for coverage, which are not mutually exclusive nor separated by either conjunctive or disjunctive pronouns, thus giving rise to confusion whether one or all three must be met for coverage to be found.

The Court is aware that plaintiffs have, in their supplemental and amended complaint, made a positive and direct allegation, that defendants "rewr[o]te the law" and "flatly disregard[ed] the scope of their authority." Rec. Doc. 15, ¶ 26.3. The Court is also aware that in ruling on a 12(b) motion, it must assume the truth of the allegations of the complaint. However, the Court should "not accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000) (citations omitted). Having reviewed the complaint in detail, and having taken judicial notice of applicable regulations, the Court finds that plaintiffs have not and cannot state facts which suggest that the conduct by defendants of which they complain was not discretionary and within their authority as a Medicare carrier; thus, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Before concluding that defendants enjoy official immunity from plaintiffs' suit, the Supreme Court cautions that "[i]n deciding whether particular governmental functions properly fall within the scope of absolute official immunity, however, courts should be careful to ... consider whether the contribution to effective government in particular contexts outweighs the potential harm to individual citizens." *Westfall,* 108 S.Ct. at 585. The Court finds that in this particular context, immunity should attach to defendants exercising the official, discretionary function of interpreting federal regulations and applying them to determine coverage. In so concluding, the Court is impressed by the fact that federal law provides a comprehensive scheme containing ample remedies for plaintiffs' grievances, and notes that in fact, plaintiffs successfully availed themselves of these remedies, obtaining a ruling from HCFA reversing defendants' interpretation within a matter of weeks. Further, to deny immunity to defendants for carrying out this function in this instance would likely have the undesirable result of making these and other officials "unduly timid in carrying out their official duties," at the expense of effective government. *Westfall,* 108 S.Ct. at 583. Therefore, the Court finds no compelling reason to deny defendants the official immunity to which they are otherwise entitled, and accordingly;

**\*4** IT IS ORDERED that defendants' Reiterated Motion to Dismiss (Rec.Doc. 17) should be and is hereby GRANTED, and plaintiffs' claims against Arkansas Blue Cross and Blue Shield and Merle Francis are hereby DISMISSED with prejudice.

E.D.La.,2001.
Lifeline EMS, Inc. v. Arkansas Blue Cross & Blue

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118597 (E.D.La.), Med & Med GD (CCH) P 300,639
**(Cite as: 2001 WL 118597 (E.D.La.))**

Page 5

Shield
Not Reported in F.Supp.2d, 2001 WL 118597
(E.D.La.), Med & Med GD (CCH) P 300,639

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Department of Health and Human Services
Office of the Secretary

*ALJ Appeal No. : 1-236378831 / Patricia Parson*

## OFFICE OF MEDICARE HEARINGS AND APPEALS

Mid-West Field Office
200 Public Square, Suite 1300
Cleveland, OH 44114
Team 17
216-615-4000
216-615-4012 (Direct)
216-615-6735 (FAX)

February 15, 2008

Nationwide Ambulance Services
Attn: Anna Gerb
410 North Ave E
Cranford, NJ 07016-2437

Subject:     <u>Notice of Decision</u>

Dear Anna Gerb:

Enclosed is the decision of the Administrative Law Judge (ALJ) on your Medicare appeal.  Please carefully review this notice and the attached decision.

**Your Appeal Rights**

If you do not agree with the ALJ's decision, you may appeal the decision by filing a Request for Review with the Medicare Appeals Council (MAC).  Other parties to your appeal and, in some cases, the Centers for Medicare and Medicaid Services (CMS) or its contractors may also ask the MAC to review the ALJ's decision.  If no party appeals and the MAC does not review the ALJ's decision at the request of CMS or its contractors, the ALJ's decision is binding on all parties.  You will have no right to ask a federal court to review the ALJ's decision.

If you are not already represented, you may appoint an attorney or other person to represent you in any filings or proceedings before the MAC.  Legal aid groups may provide legal services at no charge.  If you or your representative have not completed or submitted an Appointment of Representative form, please contact the MAC for further instructions or to obtain a form.

**What to Include in Your Request for Review**

Your appeal must identify the parts of the ALJ's decision with which you disagree, and explain why you disagree.  For example, if you believe that the ALJ's decision is inconsistent with a statute, regulation, CMS ruling, or other authority, you should explain why the decision is inconsistent with that authority.

OMHA-351 (10/07)                    Page 1 of 3

*ALJ Appeal No. : 1-236378831 / Patricia Parson*

You may submit a Request for Review with the MAC in either of the following two ways:

1. Complete and submit the enclosed Request for Review Form (DAB-101).

2. Submit to the MAC a written request that contains all of the following information:

   - The beneficiary's name;
   - The beneficiary's Medicare Health Insurance Claim Number (HICN);
   - The item or service in dispute;
   - The specific date(s) the item(s) or service(s) were provided;
   - The date of the ALJ decision;
   - The ALJ appeal number;
   - The parts of the ALJ's decision with which you disagree and an explanation of why you disagree; and
   - Your name and signature and/or the name and signature of your representative.

*Please send a copy of the ALJ's decision with your Request for Review.*

**When and Where to File the Request for Review**

You must submit your request to the MAC **within sixty (60) days** of receipt of this notice.  The MAC will assume you received this notice five (5) days after the date indicated at the top of this notice unless you show that you received this notice at a later date.  If you file your Request for Review late, you must establish that you had good cause for submitting the request late.

**Your Request for Review should be mailed to:**

> Department of Health and Human Services
> Departmental Appeals Board
> Medicare Appeals Council, MS 6127
> Cohen Building Room G-644
> 330 Independence Ave., S.W.
> Washington, D.C.  20201

Alternatively, you may fax your request to (202) 565-0227.  If you send a fax, please **do not** also mail a copy.  *You must always send a copy of your Request for Review to the other parties to your appeal.*  If you do not have the addresses of the other parties, please contact our office.

**What Procedures Apply to the MAC's Review of Your Appeal**

The Medicare regulations at 42 C.F.R. Part 405, Subpart I, apply to this case.

**How the MAC May Respond to Your Request for Review**

The MAC will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary.  The MAC may change the parts of the ALJ's decision that you agree

*ALJ Appeal No. : 1-236378831 / Patricia Parson*

with. The MAC may adopt, change, or reverse the ALJ's decision, in whole or in part, or it may send the case back to an ALJ for further action. The MAC may also dismiss your appeal.

## Where to Obtain Additional Information About the MAC

Additional information about the MAC is available on the Departmental Appeals Board's website at http://www.hhs.gov/dab/reconsiderationqic.html. You can also obtain additional information by contacting the MAC at (202) 565-0100.

## Questions About the Decision

If you would like additional information concerning the attached decision, please call or write this office at: reference contact information above.

Sincerely,

LeAnn R. Canter
U.S. Administrative Law Judge

Enclosures:
>       Form OMHA-152, Decision
>       Form OMHA-156, Exhibit List
>       Form DAB-101, Request for Review

Cc:

>       FCSO-QIC Part B
>       PO Box 45029
>       Jacksonville, FL  32232-5029

>       Empire Medicare Services
>       PO Box 69202
>       Harrisburg, PA 17106-9202



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Midwestern Region**
**Cleveland, Ohio**

| | | | |
|---|---|---|---|
| Appeal of: | **Nationwide Ambulance Services, Inc.** | ALJ Appeal No.: | **1-236378831** |
| Beneficiary: | **Patricia Parson** | **Medicare Part B** | |
| HICN: | **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A** | Before: | **LeAnn R. Canter** U.S. Administrative Law Judge |

## DECISION

After careful consideration of the evidence and arguments presented in the record, a **FULLY FAVORABLE** on-the-record decision is issued for Nationwide Ambulance Services, Inc. (hereafter Appellant), without the need for a hearing. *See* 42 C.F.R. § 405.1000(g).

## Procedural History

On October 12, 2006, October 19, 2006, December 7, 2006, and December 16, 2006, the Appellant transported Patricia Parson (hereafter Beneficiary) by ambulance from her residence to a hospital based End-Stage Renal Disease (ESRD) facility and back. The Appellant submitted a claim to Medicare for payment for the transports on each date of service (A0428 RG, A0425 RG, A0428 GR, and A0425 GR). Medicare originally made payment for the claims, but on June 18, 2007 (by remittance advice) and June 22, 2007 (by overpayment notice and request for repayment) denied coverage for the claims due to "the services are not covered." Medicare redeterminations on August 10, 2007, upheld the coverage denials. The Appellant appealed the redeterminations to First Coast Service Options, a Medicare Qualified Independent Contractor (QIC). On November 12, 2007, the QIC upheld the payment denials, finding the documentation does not contain evidence the Beneficiary could not have been transported safely by other means. The QIC also found the Beneficiary liable for the denied charges.

On January 7, 2008, the Office of Medicare Hearings and Appeals (OMHA) received the Appellant's timely filed Request for a Medicare Hearing by an Administrative Law Judge (ALJ), with supportive documentation. (Exhibit 1, pages 2-21.) It appears that the supportive documentation was previously submitted. Nonetheless, to the extent that any of the

documentation is newly submitted, the documentation is relevant, probative, and its admission is consistent with fundamental fairness. Accordingly, there is good cause for the late submission of any documentation. The remaining amount in controversy meets the jurisdictional requirements for a hearing before OMHA. *See* 72 Fed. Reg. 73348-49 (December 27, 2007); 42 C.F.R. § 405.1006. The evidence in the hearing record supports a fully favorable finding, without the need for a hearing. *See* 42 C.F.R. § 405.1000(g).

### Issues

The QIC upheld the payment denials for the ambulance transports, finding the documentation does not contain evidence the Beneficiary could not have been transported safely by other means. The QIC also found the Beneficiary liable for the denied charges. The Appellant argues that Medicare coverage criteria for ambulance transportation are met. The issues to be determined by the ALJ are: Have the Medicare coverage criteria been met for the ambulance transportation and if not, should reimbursement be made under § 1879 of the Act? In addition, if Medicare coverage criteria are not met, or if reimbursement is not made under § 1879 of the Act, who is responsible for the non-covered charges?

### Findings Of Fact

After careful consideration of the entire record, the ALJ makes the following findings of fact:

1. The request for hearing was timely filed and/or there is good cause for untimely filing; and, there is a sufficient amount in controversy.

2. The appeal is properly before the undersigned ALJ in the OMHA Midwestern Field Office.

3. On October 12, 2006, October 19, 2006, December 7, 2006, and December 16, 2006, the Appellant transported the Beneficiary by ambulance from her residence to a hospital based End-Stage Renal Disease (ESRD) facility and back.

4. The Appellant submitted a claim to Medicare for payment for the transports on each date of service (A0428 RG, A0425 RG, A0428 GR, and A0425 GR).

5. An uneventful transport does not preclude the necessity for medical monitoring.

6. The Beneficiary was not able to ambulate, sit up in a wheelchair, or was bed confined.

7. The Beneficiary's physician certified that: the Beneficiary should not be transported by other means; she was bed-confined; she was not ambulatory; she could not be safely transported by wheelchair van or car; and, all other means of transportation were contraindicated.

8. The Beneficiary, with end-stage renal disease, later complicated with hip precautions for which she could not sit safely, required ambulance transportation and all other means of transportation were contraindicated.

9. The Beneficiary's medical condition was such that transportation by ambulance was medically required and the use of any other method of transportation was contraindicated. See 42 C.F.R. § 410.40(d).

10. The criteria for Medicare coverage of the ambulance transports are met and the transportation is payable under Part B of Medicare.

**Legal Framework**

**I.   ALJ Review Authority**

*A. Jurisdiction*

An individual who, or an organization that, is dissatisfied with the reconsideration of an initial determination is entitled to a hearing before the Secretary of the Department of Health and Human Services (HHS), provided there is a sufficient amount in controversy and a request for hearing is filed in a timely manner.  Social Security Act (Act) § 1869(b)(1)(A) *[42 U.S.C. § 1395ff(b)(1)(A)]*.

In implementing this statutory directive, the Secretary has delegated his authority to administer the nationwide hearings and appeals system for the Medicare program to OMHA.  *See* 70 Fed. Reg. 36386, 36387 (June 23, 2005).  The ALJs within OMHA issue the final decisions of the Secretary, except for decisions reviewed by the Medicare Appeals Council.  *Id.*

A hearing before an ALJ is only available if the remaining amount in controversy is $120 or more.  *See* 72 Fed. Reg. 73348-49 (December 27, 2007); 42 C.F.R. § 405.1006.  The request for hearing is timely if filed within sixty days from the date the party receives notice of the QIC's reconsideration.  *See* 42 C.F.R. § 405.1002.

*B. Scope of Review*

Under the Centers for Medicare and Medicaid Services' (CMS) implementation policy for the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000 (BIPA), Pub. Law 106-554, app. F, 114 Stat. 2763, 2763A-463, and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), Pub. Law 108-173, 117 Stat. 2066, all Medicare Part A and Part B claims, which have been issued a redetermination by a Fiscal Intermediary (FI) on or after May 1, 2005, and all Medicare Part B claims, which have been issued a redetermination by a Carrier on or after January 1, 2006, are governed by the ALJ hearing procedures outlined at 42 C.F.R. § 405.1000 through § 405.1054.  *See* 70 Fed. Reg. 11420, 11424-26 (Mar. 8, 2005).

"The issues before the ALJ include all the issues brought out in the initial determination, redetermination, or reconsideration that were not decided entirely in a party's favor. (For purposes of this provision, the term "party" does not include a representative of CMS or one of its contractors that may be participating in the hearing.) However, if evidence presented before the hearing causes the ALJ to question a favorable portion of the determination, he or she notifies the parties before the hearing and may consider it an issue at the hearing." 42 C.F.R. § 405.1032(a).

"An ALJ may also issue a decision on the record on his or her own initiative if the evidence in the hearing record supports a fully favorable finding." 42 C.F.R. § 405.1000(g). In addition, '[i]f all parties to the hearing waive their right to appear at the hearing in person or by telephone or video-teleconference, the ALJ may make a decision based on the evidence that is in the file and any new evidence that is submitted for consideration." 42 C.F.R. § 405.1000(e).

### C. Standard of Review

"The [Office of Medicare Hearings and Appeals]…is staff[ed] with Administrative Law Judges who conduct 'de novo' hearings…." 70 Fed. Reg. 36386 (June 23, 2005); *see also In re Atlantic Anesthesia Associates, P.C.*, MAC (June 2004) (An ALJ qualified and appointed pursuant to the Administrative Procedure Act acts as an independent finder of fact in conducting a hearing pursuant to section 1869 of the Act. This requires *de novo* consideration of the facts and law.).

## II.   Principles of Law

### A. Statutes and Regulations

The Medicare Part B program entitles a beneficiary to have payment made to him or her on his or her behalf for medical and other health services. Act § 1832(a)(1) *[42 U.S.C. § 1395k(a)(1)]*; *see also* 42 C.F.R.  § 410.3(a)(1). Coverage of medical and other health services is qualified by the overarching principles of §§ 1862(a) and 1833(e) of the Act *[42 U.S.C. §§1395y(a) and 1395l(e)]*. Section 1862(a) limits Medicare payments to items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," notwithstanding any other provision of Title XVIII of the Act. *See also* 42 C.F.R. § 411.15(k)(1). Section 1833(e) of the Act requires a claim for payment under Medicare Part B to be supported by sufficient information and documentation. *See also* 42 C.F.R. § 424.5(a)(6).

The benefits provided to an individual by the Medicare Part B program include entitlement to have payment made to the individual or on the individual's behalf (subject to the provisions of this part *[Act § 1832(a)(1) [42 U.S.C. § 1395k(a)(1)]]*) for medical and other health services." Act § 1832(a)(1) *[42 U.S.C. § 1395k(a)(1)]*. The term "medical and other health services," is defined by the Act to include, among many other things ambulance service where the use of other methods of transportation is contraindicated by the individual's condition, but only to the extent provided in regulations. *See* Act § 1861(s)(7) *[42 U.S.C. § 1395x(s)(7)]*.

Medicare Part B pays for ambulance transportation if: (1) the supplier meets the applicable vehicle, staff, billing and reporting requirements of 42 C.F.R. § 410.41; (2) the service meets the medical necessity requirements of 42 C.F.R. § 410.40(d); and, (3) the service meets the origin and destination requirements of 42 C.F.R. § 410.40(e). *See* 42 C.F.R. § 410.40. In particular,

> Medicare covers ambulance services, including fixed wing and rotary wing ambulance services, only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated. The beneficiary's condition must require both the ambulance transportation itself and the level of service provided in order for the billed service to be considered medically necessary. Nonemergency transportation by ambulance is appropriate if either: the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required. Thus, bed confinement is not the sole criterion in determining the medical necessity of ambulance transportation. It is one factor that is considered in medical necessity determinations. For a beneficiary to be considered bed-confined, the following criteria must be met:
>> (i) The beneficiary is unable to get up from bed without assistance.
>> (ii) The beneficiary is unable to ambulate.
>> (iii) The beneficiary is unable to sit in a chair or wheelchair.

42 C.F.R. § 410.40(d)(1). Pursuant to 42 C.F.R. § 410.40(e)(4), Medicare covers ambulance transportation for a beneficiary who is receiving renal dialysis for treatment of ESRD, from the beneficiary's home to the nearest facility that furnishes renal dialysis, including the return trip.

In addition, Medicare covers medically necessary nonemergency ambulance services that are scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section *[42 C.F.R. § 410.40(d)(1)]* are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished. 42 C.F.R. § 410.40(d)(2).

### B: Policy and Guidance

Section 1871(a)(2) of the Act states that unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than an National Coverage Determination (NCD), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. *See also* 42 C.F.R. § 405.1060. However, in lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies (LMRPs) or local coverage determinations (LCDs).

In the CMS, Medicare Benefit Policy Manual (MBPM) (Internet-Only Publ'n 100-2)[1] ch 10, CMS provides interpretive guidance on the coverage of ambulance transportation under Part B of Medicare.

CMS instructs that medical necessity for ambulance services

> ... is established when the patient's condition is such that use of any other method of transportation is contraindicated. In any case in which some means of transportation other than an ambulance could be used without endangering the individual's health, whether or not such other transportation is actually available, no payment may be made for ambulance services.

*Id.*, § 10.2.1. Contractors may presume a patient's condition is such that the use of any other method of transportation is contraindicated when the beneficiary was bed-confined before and after the ambulance trip. *Id.*, § 10.2.3. A beneficiary is bed-confined if he/she is:

> Unable to get up from bed without assistance;
> Unable to ambulate; and
> Unable to sit in a chair or wheelchair. *Id.*

The term "bed confined" is not synonymous with "bed rest" or "nonambulatory". Bed-confinement, by itself, is neither sufficient nor is it necessary to determine the coverage for Medicare ambulance benefits. It is simply one element of the beneficiary's condition that may be taken into account in the intermediary's/carrier's determination of whether means of transport other than an ambulance were contraindicated. *Id.* Neither the presence nor absence of a signed physician's order for an ambulance transport necessarily proves (or disproves) whether the transport was medically necessary. *Id.*, § 10.2.4.

An ALJ is not bound by LCDs, LMRPs, or CMS program guidance, such as program memoranda and manual instructions, but will give substantial deference to these policies if they are applicable to a particular case. *See* 42 C.F.R. § 405.1062. *See also Lyng v. Payne*, 476 U.S. 926, 939 (1986) (an ALJ is not bound by manuals, program memoranda and other issuances created by CMS, or by a contractor's medical policies, LCDs, LMRPs, or other program guidance, such as manuals; however, to the extent that they are consistent with the Social Security Act and CMS regulations, an ALJ must accord substantial deference to them as valid interpretive rules that clarify the application of statutory and regulatory requirements); and, *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, at 102 (1995) (concluding that an agency manual section was a valid interpretive rule and also found that it was reasonable for the agency to follow it.) However, a contractor's medical policies shall not restrict or conflict with coverage provisions in interpretive manuals. *See* CMS, Medicare Program Integrity Manual (MPIM) (Internet-Only Publ'n 100-8) ch 13, § 13.5 (May 2004).

## Analysis

The instant appeal is from a party dissatisfied with the decision of the QIC to affirm the initial

---

[1] CMS Manuals can be found at the CMS website at http://www.cms.hhs.gov/Manuals/

determination and redetermination. The request for hearing was timely filed and there is a sufficient amount in controversy. The appeal is therefore properly before the undersigned ALJ in the OMHA Midwestern Field Office.

The record contains a number of documents that are listed on the Exhibit list contained within the record/appeal file. Review of the record shows that on October 12, 2006, October 19, 2006, December 7, 2006, and December 16, 2006, the Appellant transported the Beneficiary by ambulance from her residence to a hospital based End-Stage Renal Disease (ESRD) facility and back. The Appellant submitted a claim to Medicare for payment for the transports on each date of service (A0428 RG, A0425 RG, A0428 GR, and A0425 GR). The QIC agrees that the record does indicate the Beneficiary was not able to ambulate, sit up in a wheelchair, or was bed confined. But, the QIC upheld the payment denials for the ambulance transports, finding the documentation does not contain evidence the Beneficiary could not have been transported safely by other means, noting: the Beneficiary's vitals were stable during the transport, she was in no distress, and there were no other complaints. However, review of the record shows the Beneficiary's physician certified that: the Beneficiary should not be transported by other means; she was bed-confined; she was not ambulatory; she could not be safely transported by wheelchair van or car; and, all other means of transportation were contraindicated. This patient, with end-stage renal disease, later complicated with hip precautions for which she could not sit safely, required ambulance transportation and all other means of transportation were contraindicated. An uneventful transport does not preclude the necessity for medical monitoring. On the basis of this record, the undersigned ALJ finds the Beneficiary's medical condition was such that transportation by ambulance was medically required and the use of any other method of transportation was contraindicated. *See* 42 C.F.R. § 410.40(d). Therefore, the medical necessity requirements of 42 C.F.R. § 410.40(d) are met.

Medicare Part B pays for ambulance transportation if: (1) the supplier meets the applicable vehicle, staff, billing and reporting requirements of 42 C.F.R. § 410.41; (2) the service meets the medical necessity requirements of 42 C.F.R. § 410.40(d); and, (3) the service meets the origin and destination requirements of 42 C.F.R. § 410.40(e). In this case, the vehicle, staff, billing and reporting requirements of 42 C.F.R. § 410.41 and the origin and destination requirements of 42 C.F.R. § 410.40(e) were not at issue in the lower level decisions. Pursuant to 42 C.F.R. § 405.1032, those requirements are not before the ALJ.

Accordingly, the criteria for Medicare coverage of the ambulance transports are met and the transportation is payable under Part B of Medicare. In addition, because the ambulance transportation is covered by Medicare, it is not necessary to determine whether payment should be made under § 1879 of the Act.

## Conclusions Of Law

Medicare coverage criteria are met for Nationwide Ambulance Services, Inc.'s ambulance transportation of Patricia Parson from her residence to the ESRD treatment facility and back on October 12, 2006, October 19, 2006, December 7, 2006, and December 16, 2006, and the claims for each date (A0428 RG, A0425 RG, A0428 GR, and A0425 GR) are reimbursable under Part B of Medicare. The overpayment assessment is reversed.

ALJ Appeal No.: 1-236378831                                          Page 8 of 8

## Order

The Medicare Contractor is **DIRECTED** that it **shall** reimburse Nationwide Ambulance Services, Inc. under Part B of Title XVIII of the Social Security Act for the ambulance transportation provided to Patricia Parson on each of the following dates of service:  October 12, 2006, October 19, 2006, December 7, 2006, and December 16, 2006 (A0428 RG, A0425 RG, A0428 GR, and A0425 GR).  Nationwide Ambulance Services, Inc. is entitled to be reimbursed any interest or payments that it made on the overpayment determination that are not consistent with this Decision.

**SO ORDERED.**

LeAnn R. Canter
U.S. Administrative Law Judge

FEB **1 5** 2008
Date

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Midwestern Region**
**Cleveland, Ohio**

| | | | |
|---|---|---|---|
| Appeal of: | **Nationwide Ambulance Services, Inc.** | ALJ Appeal No.: | **1-236378831** |
| Beneficiary: | **Patricia Parson** | **Medicare Part B** | |
| HICN: | **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A** | Before: | **LeAnn R. Canter** U.S. Administrative Law Judge |

## EXHIBIT LIST

| EXHIBIT | EXHIBIT DESCRIPTION | PAGE RANGE |
|---|---|---|
| A | Acknowledgement Letter (01/25/08) | 001 thru 003 |
| B | All records contained within the captioned Medicare Claims appeal file, for dates of service 10/12/2006 thru 12/16/2006, including but not limited to: Administrative Law Judge Hearing Request, initial, redetermination and reconsideration decisions; other CMS correspondences, CMS computerized claim information/print screens, medical records and Medicare regulations and guidelines; Documentation submitted by Appellant at all levels of appeal; Correspondences between OMHA and Appellant. | 001 thru 164 |

Dated: <u>2/14/2008</u>